# EXHIBIT A

Robert Tauler, Esq. (SBN 241964)
robert@taulersmith.com
Matthew J. Smith, Esq. (SBN 240353)
matthew@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/26/2024 3:47 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

*Attorneys for Plaintiff*

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| COURTNEY MITCHENER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>   vs.<br><br>HUEL INC., a New York corporation; and DOES 1 through 25, inclusive,<br><br>      Defendants. | Case No. 24STCV21852<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT (CAL. PENAL CODE § 631(a));**<br><br>**(2) VIOLATIONS OF CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

COMPLAINT

**INTRODUCTION**

1.     Defendant is an online retailer selling packaged meals and nutritional supplements. Defendant has installed multiple data collection applications on the Website in collaboration with TikTok and other data companies that serve to gather data, develop secret profiles, learn "tendencies" and "draw inferences" about visitors to their website.  Defendant's data collection is done without the knowledge or consent of website users, who are unwittingly sharing information about their newborns and toddlers to data companies worldwide.

2.     Defendant's conduct violates the California Invasion of Privacy Act ("CIPA") and the California Trap and Trace Law.

**JURISDICTION AND VENUE**

3.     Subject matter jurisdiction is proper in this Court because the amount in controversy is within this Court's jurisdictional limit.

4.     Defendant has their principal executive offices in this state and as such has sufficient minimum contacts in the State of California or otherwise purposefully avails itself of the California market. Exercising jurisdiction over Defendant would be consistent with traditional notions of fair play and substantial justice.

5.     Venue is proper in this County pursuant to California Code of Civil Procedure section 1250.020.

**PARTIES**

6.     Plaintiff is a citizen of California residing within Los Angeles County.  Plaintiff engaged with Defendant's website during the statutory period, including by using the chat feature embedded on the site.

7.     Defendant Huel Inc. ("Defendant") is an online retailer that operates the website www.huel.com (the "Website") and sells packaged meals and nutritional supplements.  Defendant is a New York corporation with its principal executive offices located at 45 Main Street, Suite 604, Brooklyn, NY 11201.

8.     The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE

- 2 -
COMPLAINT

DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

### FACTUAL ALLEGATIONS

### A.    Defendant's Use of Trap and Trace Technology.

9.    Defendant has installed on its Website software created by TikTok in order to identify website visitors. (the "TikTok Software").    The TikTok Software acts by via a process known as "fingerprinting."  Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.

10.    The TikTok Software is deployed automatically when a user lands on Defendant's website, as can be seen from the screenshot below, which shows the network activity of electronic impulses being sent to TikTok from defendant's website the moment a user lands on the site.



11.    Thus, there is no way for website visitors to be informed (let alone consent) to the tracking of their web activity by TikTok since it happens automatically.  The TikTok Software gathers device and browser information, geographic information, referral tracking, and url tracking.  The TikTok Software also requests, validates, and transmits other identifying information, including website visitors phone numbers and email addresses.

12.    Data captured by the TikTok Software is sent to TikTok's servers so that TikTok can reconstruct the user's identity. As part of this arrangement, Defendant has the ability to use some of the data to run an advertising campaign on TikTok to promote financial services.  TikTok, however, has complete access to data stored on its servers.

13.    The objective for TikTok is to gather as much information about Americans as they can, by any means necessary.  In this regard, TikTok has recently been identified as "a platform for surveillance"[1] by the director of the NSA.

14.    California Penal Code § 638.50(c). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."   California Penal Code § 638.50(c).

15.    The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

16.    The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses.  It is designed solely to meet this objective.

17.    Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

---

[1]    https://www.defense.gov/News/News-Stories/Article/Article/3354874/leaders-say-tiktok-is-potential-cybersecurity-risk-to-us/

- 4 -

**B.      Defendant's Chat Feature.**

18.      Chat boxes are common on many commercial websites and serve many legitimate business purposes, including facilitating sales and reducing expenses for business.  However, in recent years, aided by significant advances in technology, chat boxes are increasingly operated by third party data companies as a means for corporate surveillance.

19.      Due largely to the fact that commercial chat boxes seem innocuous and inconspicuous, very few website users suspect that their chats are being used as a means to obtain significant amounts of information about them.  However, like all means of surveillance, the inconspicuous nature of chat boxes is exactly what makes them valuable tools to meet their objective.  In many instances, such as here, the website operating the chat boxes never disclose the nature of the chat box interaction: namely that chats are being routed to third party servers so that a third party may to record, store, and use communication for the purposes of collecting information about a specific internet user.

20.      Defendant has covertly embedded code into its chat feature that automatically records and creates transcripts of all such private conversations. To enable the eavesdropping, Defendant has paid substantial sums to an independent, third-party company—ADA—to embed code into its Website's chat function that enables ADA to secretly intercept in real time, eavesdrop upon, and store transcripts of arlo.com chat communications with unsuspecting website visitors.

21.      Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

22.      This embedded code found in the chat feature enables ADA to covertly intercept and monitor a website visitor's chat conversation in real-time, without their knowledge or consent. Furthermore, ADA stores transcripts of Defendant's chat communications with unsuspecting website visitors. Below is a snippet of the embedded code by ADA found on Defendant's website:

```
▼<iframe src="https://huel.ada.support/embed/x-storage/e9a4287/index.html" scrolling="no" frameborder="0" id="ada
    -x-storage-frame" name="ada-x-storage-frame" title="ada-x-storage-frame" class="ada-x-storage-frame" role="appli
    cation" style="position: absolute; top: -9999px; left: -9999px; visibility: hidden; height: 0px; width: 0px;
    "> == $0
```

23.      ADA's privacy policy reveals highly concerning practices whereby they actively build sophisticated user profiles, which they subsequently share and sell to other entities, such as the defendant. These actions result in the enrichment of both ADA and the defendant, but at the expense

of consumer privacy and well-being. The privacy policy of ADA contains several concerning actions that gather user information without proper disclosure, thereby compromising consumer privacy:

- Unwitting Information Gathering: ADA and its service providers automatically collect various details about users' devices and their interactions with the Site or Services. This includes sensitive information like IP addresses, browser type, operating system, geographical location, and device IDs. Users are unknowingly subjected to such data collection, without explicit disclosure or consent.

- Extensive Personal Information Collection: ADA's policy enables the collection of personal information, including names, business and personal contact details, usernames, passwords, and users' positions and roles within their organizations. Additionally, the policy mentions the collection of photos, videos, or audio recordings of sales calls, potentially without the user's knowledge or informed consent.

- Lack of Proper Disclosure: ADA's policy fails to provide clear and transparent information regarding the purpose and use of the collected personal data. Users are left unaware of how their information will be utilized, leading to potential misuse and a lack of control over their own data.

- Unauthorized Sharing of User Data: ADA's policy states that collected information may be shared with third parties, including advertisers, partners, and sponsors, without explicit user consent. This broad language raises concerns about the potential for unauthorized sharing or disclosure of personal data, compromising user privacy and control over their information.

- Lack of Clarity in Third-Party Data Collection: ADA reserves the right to collect user information from various sources, including affiliates, marketing vendors, and third-party databases. However, the policy does not provide sufficient transparency about the extent and nature of this data collection, leaving users unaware of the sources and accuracy of the acquired data.
(See source: https://www.ada.cx/legal-resources/privacy-policy)

- 6 -
COMPLAINT

24.     Overall, ADA's privacy policy exhibits egregious actions by gathering user information without their knowledge and consent. The lack of proper disclosure regarding data collection and sharing practices further undermines consumer privacy, resulting in a significant concern for the protection of user information.

25.     ADA openly admits to aggregating all collected information through their services. They then exploit this data for various purposes, including research and marketing, without any limitations. This unrestricted utilization of user data raises serious concerns about the privacy and control users have over their personal information.

26.     ADA's policy, with its unrestricted use and sharing of user information, demonstrates a blatant disregard for user privacy and highlights their active involvement in building and profiting from sophisticated user profiles. This unethical conduct enables ADA and similar entities, including the defendant, to prioritize financial gains over consumer privacy and personal well-being.

27.     They share this information with their group companies, third-party service providers, and partners for various purposes, potentially exposing consumers' data to multiple entities. Moreover, ADA discloses personal information to law enforcement, regulatory bodies, government agencies, and other third parties when deemed necessary, without clearly specifying the circumstances or limitations. International data transfers may also occur, exposing personal information to countries with different data protection laws. Despite mentioning safeguards, ADA's privacy policy lacks transparency in explaining how consumer privacy is adequately protected, leaving users uncertain about the security of their personal information.

28.     Furthermore, ADA engages in the practice of acquiring marketing data from third parties and incorporating it into its existing user database. This is done with the aim of enhancing user profiles, regardless of whether they are visitors, end-users, or customers. Disturbingly, users of ADA's chatbox are not informed that by simply engaging with the chat feature, they are being subjected to this surveillance.

29.     Visitors would be shocked and appalled to know that Defendant has been secretly recording conversations of visitors and hiring third parties to eavesdrop on them under the guise of "data analytics." Such illegal and offensive conduct poses a grave threat to individuals' privacy rights

COMPLAINT

and has the potential to cause significant harm. A recent study by the Electronic Privacy Information Center, a highly respected authority on digital privacy, revealed that a majority of adults express deep concerns about data privacy, with 75% of adults being unaware of the extent to which their personal data is collected, stored, and exploited by companies. The defendant, with disingenuous claims of prioritizing security, flagrantly undermines user privacy, displaying a disconcerting disregard for their users' privacy rights and a blatant betrayal of their trust.

30.     The Defendant's failure to disclose their intrusive data collection practices to their customers represents a clear violation of their legal and ethical obligations, and the Plaintiff is entitled to seek appropriate legal remedies to address the harm caused by the Defendant's actions. Therefore, we argue that the Plaintiff has a strong case against the Defendant and deserves a just and fair outcome in this matter.

31.     Within the statute of limitations period, Plaintiff visited Defendant's Website. Like anyone who accesses the internet, Plaintiff and class members use smart phones (cellular telephone with integrated computers and operating systems that enables web browsing), desktop computers, and/or wi-fi-enabled laptops that using a combination of cellular and landline telephony. As such, all of the class members' conversations with Defendant were transmitted in real time from a "cellular radio telephone" and/or "landline telephone," as defined by CIPA, and subject to CIPA's requirements and prohibitions.

32.     Defendant did not inform Plaintiff, or any of the Class Members, that Defendant was secretly wiretapping or recording their communications or aiding, abetting, and paying third parties to eavesdrop on them, despite website users having a reasonable expectation of privacy in using the seemingly harmless chat box feature.

33.     Defendant did not obtain Class Members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did Class Members know at the time of the conversations that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

## CLASS ALLEGATIONS

34.    Plaintiff brings this action individually and on behalf of all others similarly situated in a (the "Class") defined as follows:

> **(a) All persons within California who within the statute of limitations period whose chats were transcribed by third parties; and/or**
>
> **(b) All persons within California who within the statute of limitations period whose identifying information was sent to TikTok.**

35.    NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be well into the thousands. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

36.    COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a.    Whether Defendant caused electronic communications from Class Members with the website to be recorded, intercepted, and/or monitored;

b.    Whether Defendant aided and abetted a third-party in eavesdropping on such communications;

c.    Whether Defendant installed the TikTok Software on the Website;

d.    Whether the TikTok Software is a trap and trace process as defined by law;

e.    Whether Plaintiff and Class Members are entitled to statutory penalties; and

f.    Whether Class Members are entitled to injunctive relief.

g.    Whether Class Members are entitled to disgorgement of data obtained unlawfully.

37.    TYPICALITY: As a person who visited Defendant's Website and whose electronic communication was subjected to a trap and trace process on Defendant's Website, they are typical of the Class.

38.    ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

39.    SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

**FIRST CAUSE OF ACTION**

**Aiding and Abetting Violations of CIPA**

**Cal. Penal Code § 631(a)**

40.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

41.    Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, or contrivance, or in any other manner…(1) intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system; or (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or (3) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or (4) who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

42.    The software embedded on Defendant's website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, or contrivance, or . . . other manner" used to engage in the prohibited conduct alleged herein.

- 10 -

COMPLAINT

43.    At all relevant times, Defendant aided, abetted, and even paid third parties to eavesdrop upon such conversations. Plaintiff and the Class Members did not expressly or impliedly consent to any of Defendant's actions.

44.    Defendant's conduct constitutes numerous violations of Cal. Penal Code § 631(a), entitling Plaintiff and the Class Members are entitled to injunctive relief, disgorgement of data obtained through the above trap and trace processes, statutory damages, and attorney's fees. Cal. Penal Code § 637.2.

**SECOND CAUSE OF ACTION**

**Violations of California Trap and Trace Law**

**Cal. Penal Code § 638.51**

45.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

46.    California Penal Code §638.51 (the "California Trap and Trace Law") provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a).

47.    A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."   California Penal Code § 638.50(c).

48.    Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is designed precisely to identify the source of the incoming electronic and wire communications to the Website.  Defendant did not obtain consent from Plaintiff or any of the class members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

49.    CIPA imposes civil liability and statutory penalties for violations of §638.51. California Penal Code § 637.2; see also, *Greenley v. Kochava*, 2023 WL 4833466, at *15-*16 (S.D. Cal. July 27, 2023).

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.      An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

2.      An order enjoining Defendant's conduct as alleged herein and ordering disgorgement of data acquired by Zendesk and the TikTok Software;

3.      Statutory damages pursuant to CIPA;

4.      Punitive damages;

5.      Reasonable attorneys' fees and costs; and

6.      All other relief that would be just and proper, as determined by the Court.

DATED: August 26, 2024                                    TAULER SMITH LLP


                                        By:    */s/ Robert Tauler*
                                                Robert Tauler, Esq.
                                                *Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


DATED: August 26, 2024                                   TAULER SMITH LLP


                                      By:    */s/ Robert Tauler*
                                             Robert Tauler, Esq.
                                             *Attorneys for Plaintiff*

- 13 -
COMPLAINT